UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANITA AZARINE JONES,

                        Plaintiff,

            -vs-                    **No. 18-CV-6217-MAT**
                                    **DECISION AND ORDER**
ANDREW M. SAUL,[1] Commissioner of
Social Security,

                        Defendant.
_____

## INTRODUCTION

Anita Azarine Jones ("Plaintiff"), represented by counsel, brings this action under Title II and Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is granted to the extent that the Commissioner's decision is reversed, and the matter is remanded solely for the

_____

[1] The president nominated Andrew M. Saul to be Commissioner of Social Security and the Senate confirmed his appointment on June 4, 2019, vote number 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk of Court is directed to amend the caption to comply with this substitution.

calculation and payment of benefits, and Defendant's motion is denied.

**PROCEDURAL BACKGROUND**

On May 27, 2015, Plaintiff protectively filed an application for DIB and SSI alleging disability as of June 30, 2013,[2] due to hepatitis C, arthralgias[3] and diastolic congestive heart failure, stable brain mass, dry eye, benign hypertension, left renal cyst, lung nodules, depression, anxiety, and a history of substance abuse. Administrative Transcript ("T.") 75-118. The claim was initially denied on October 27, 2015. T. 143-46. At Plaintiff's request, a hearing was conducted on February 16, 2017, in Alexandria, Virginia by Administrative Law Judge ("ALJ") Hortensia Haaversen. Plaintiff appeared via video conference from Rochester, New York[4] without representation and testified. Also present via phone was vocational expert ("VE") William Cody. T. 73-118. ALJ Haaversen issued an unfavorable decision on August 7, 2017. T. 31-43. Plaintiff appealed the decision to the Appeals Council, which

---

[2] Plaintiff was 52 years-old at her alleged onset date, and 56 years-old at the time of the ALJ's decision; therefore, she was considered to be in the "approaching advanced age" category for the first portion of the relevant period, then in the "advanced age" category as of May 2, 2016.

[3] "Arthralgia is 'pain in a joint.'" DiPalma v. Colvin, 951 F. Supp. 2d 555, 559 n.1 (S.D.N.Y. 2013) (quoting Dorland's Illustrated Medical Dictionary at 150 (32d ed. 2012)).

[4] Although there is a discrepancy in regards to Plaintiff's appearance method in the transcript of oral hearing (T. 75), the Court's decision does not depend on resolving the discrepancy.

denied Plaintiff's request for review on January 16, 2018. T. 1-3. Plaintiff then timely commenced this action on March 15, 2018. (Docket No. 1).

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520(a). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through June 30, 2015. T. 37.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 30, 2013, the alleged onset date. T. 37.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: hepatitis C with arthralgias and diastolic congestive heart failure. The ALJ also noted that while Plaintiff was followed for a history of a stable brain mass, dry eye, benign hypertension, left renal cyst, and lung nodules as well as a history of substance abuse, "[o]verall there has not been any significant treatment needed, and no practitioner has mentioned any ongoing and significant functional limitations associated with these conditions" and they are, therefore, non-severe conditions. The ALJ further found Plaintiff's medically determinable mental impairments of depression and a history of substance abuse were non-severe. T. 37.

When determining Plaintiff's medically determinable mental impairments were non-severe, the ALJ considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 37. The four broad areas are known as the "paragraph B" criteria. T. 37.

Under the first functional area, understanding, remembering, or applying information, the ALJ determined Plaintiff's "mental status examinations suggest no more than a mild limitation in the ability to follow and understand simple directions and instructions, perform simple tasks independently, learn new tasks, perform complex tasks, and maintain a regular schedule." T. 38.

Under the second functional area, interacting with others, the ALJ concluded that Plaintiff "has no more than a mild limitation in interacting with others." T. 38.

Under the third functional area, concentrating, persisting, or maintaining pace, the ALJ determined Plaintiff had only a mild limitation because Plaintiff was able to understand and answer the questions at her hearing as well as recite her medical history. T. 38.

Finally under the fourth functional area, adapting or managing oneself, the ALJ concluded Plaintiff had no significant limitation because she was able to perform household chores, simple meal preparation, shopping, and gardening. T. 38.

At step three, the ALJ found that Plaintiff's impairments did not singularly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered section 4.02 (chronic heart failure) and determined there was no evidence to support serious limitations resulting from persistent symptoms of heart failure. T. 39.

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following additional limitations: she can lift and carry 20 pounds occasionally and 10 pounds frequently; she can stand or walk for about six hours in an eight hour workday; she can sit for six hours in an eight hour workday; she can only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; and she should avoid concentrated exposure to hazards, fumes, odors, chemical irritants, and poor ventilation. T. 39.

At step four, the ALJ determined that Plaintiff was capable of performing past relevant work as a coordinator because the past work did not require the performance of work-related activities precluded by Plaintiff's RFC. T. 43. Therefore, the ALJ did not proceed to step five and concluded that Plaintiff was not disabled as defined in the Act. T. 43.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or of the decision is based on legal error. 42. U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Twonley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

Plaintiff contends that remand is warranted for the following reasons: (1) the ALJ erred in her evaluation of multiple medical

opinions; and (2) the ALJ's step four finding that Plaintiff performed the past work of a "coordinator" was flawed. For the reasons discussed below, the Court finds that both contentions have merit and, as a result, reversal of the Commissioner's decision is required.

I.   **The ALJ's Weighing of the Medical Opinions Was Legally Erroneous, Leading to an RFC Unsupported by Substantial Evidence**

A.   **The Relevant Medical Opinions and Treating Source Statements**

1.   **The Consultative Physician's Opinion**

Plaintiff underwent an internal medicine consultative examination on September 14, 2015, with Dr. Harbinder Toor, who issued a report and medical source statement. See T. 474-78. Plainitff reported a history of nodules in her neck, brain, and upper part of her lungs bilaterally. She was suffering from headaches daily, which varied in intensity and frequency. She had pain in her left knee and left lower leg, which caused difficulty standing, walking, sitting, lifting, and carrying. Dr. Toor identified that Plaintiff was in moderate pain during the examination and walked with an abnormal gait. She had difficulty getting on and off the examination table.

Dr. Toor's clinical findings included reduced ranges of motion in the cervical and lumbar spines as well as the left knee. Plaintiff had mild pitting type edema in the left lower leg.

Dr. Toor diagnosed Plaintiff with a history of pain and edema in the lower leg, pain in the abdomen, hepatitis C, a nodule in the lungs, a small lymph node nodule, a brain mass, hyperlipidemia, vitamin D deficiency, history of a mild heart attack, and hypertension. Dr. Toor indicated that Plaintiff's prognosis was guarded. For the medical source statement, Dr. Toor opined as follows:

> She has moderate to marked limitations to standing, walking a long time. She has moderate limitations to bending or lifting. Pain interferes with her routine. Her headache can also interfere with her routine. She should avoid exertion.

T. 477.

### B. The Consultative Psychologist's Opinion

Also on September 14, 205, Plaintiff was examined by consultative psychologist Yu-Ying Lin, Ph. D., who issued a report and medical source statement. See T. 480-84. Plaintiff reported feeling depressed and suffering anxiety on and off for years. She reported feeling anxious when she had to do something; when anxiety set in, she would often sit there "and do nothing." T. 480-81. She also became anxious when people raised their voices or became argumentative. Plaintiff had panic symptoms including heart palpitations, breathing difficulty, and trembling. Dr. Lin observed that Plaintiff's affect was dysphoric and her mood, dysthymic. Her attention, concentration, and memory skills (both recent and remote) were mildly impaired due to what Dr. Lin perceived as

nervousness in the evaluation. For instance, Plaintiff could recall three objects immediately but could not recall any objects after a delay. Dr. Lin diagnosed Plaintiff with moderate major depressive disorder. For the medical source statement, Dr. Lin opined that Plaintiff was mildly limited in performing complex tasks independently, mildly limited in maintaining attention and concentration, and moderately limited in appropriately dealing with stress.

### C. The Treating Therapist's Opinion

Plaintiff's therapist, Mathurine Louis ("Ms. Louis") provided a statement on April 10, 2017, indicating that Plaintiff would have moderate limitations in understanding, remembering, carrying out, and making judgment on complex instructions; and mild limitations in understanding, remembering, carrying out simple instructions, and making judgment on simple, work-related decisions. Plaintiff also would have mild limitations interacting with others, responding to usual work situations, and responding to changes in a routine work setting. In Ms. Louis's opinion, "due to [her] anxiety and depression, [Plaintiff] is unable to be exposed to high stress jobs" as she is "[s]ometimes unable to get out of bed and carry on activity of daily living." T. 640. Ms. Louis explained that due to her anxiety, depression, and multitude of physical challenges, Plaintiff was unable to participate in certain work

activities, including standing for too long, sitting for too long, and picking up heavy things.

**D. The ALJ's Weighing of the Various Opinions Was Legally Erroneous and Relied on Mischaracterizations of the Record**

The ALJ had the foregoing three medical opinions on which she purportedly relied to make her RFC determination. However, the ALJ did not actually give "significant" or "great" weight to any of these opinions as written. Rather, she clearly mischaracterized them, as discussed below.

First, with regard to Dr. Toor's opinion, the ALJ purported to assign it "great weight" "in so far as he suggested that the claimant can perform approximately light work with postural and environmental limitations." T. 42. The ALJ opined that the portion of Dr. Toor's opinion "suggesting" that Plaintiff can perform light work "was generally consistent with the medical record as a whole as well as the type and degree of treatment needed." Id.

The applicable regulations, 20 C.F.R. §§ 404.1567(b), 416.967(b), as interpreted by Social Security Ruling ("SSR") 83-10,[5] belie the ALJ's assertion that Dr. Toor's opinion

---

[5]     Contrary to the Commissioner's suggestion, see Defendant's Memorandum of Law (Docket No. 19-1) at 18, Social Security Rulings or SSRs constitute the Commissioner's internal policy and interpretations and are "binding on all components of the Social Security Administration[.]" 20 C.F.R. § 402.35(b)(1); see also Capitano v. Secretary of Health & Human Servs., No. 836231, 1984 WL 63640, at *1 (2d Cir. Aug.17, 1984) (Social

"approximates" light work. First, the Commissioner's regulations

state that

> [l]ight work involves lifting no more than 20 pounds at
> a time with frequent lifting or carrying of objects
> weighing up to 10 pounds. Even though the weight lifted
> may be very little, a job is in this category when it
> requires a good deal of walking or standing, or when it
> involves sitting most of the time with some pushing and
> pulling of arm or leg controls. To be considered capable
> of performing a full or wide range of light work, you
> must have the ability to do substantially all of these
> activities.

20 C.F.R. §§ 404.1567(b), 416.967(b); see also Titles II & XVI:

Determining Capability to Do Other Work-the Med.-Vocational Rules

of Appendix 2, SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Jan. 1,

1983) ("The regulations define light work as . . . [involving]

frequent lifting or carrying of objects weighing up to 10 pounds.

Even though the weight lifted in a particular light job may be very

little, a job is in this category when it requires a good deal of

walking or standing--the primary difference between sedentary and

most light jobs."). SSR 83-10 further clarifies that "'[f]requent'

---

Security Rulings are considered "interpretive and not binding on
this court"). SSRs, however, are "entitled to deference except when
they are plainly erroneous or inconsistent with the Act." Gordon v.
Shalala, 55 F.3d 101, 105 (2d Cir. 1995), cert. denied, 517 U.S.
1103 (1996). Courts, including this one, frequently rely on SSRs
when evaluating ALJs' decisions and will reverse when the failure
to follow an SSR results in prejudice to the claimant. Royal v.
Astrue, No. CIV.A. 5:11-456, 2012 WL 5449610, at *8 n. 19 (N.D.N.Y.
Oct. 2, 2012), report and recommendation adopted, No. 5:11-CV-0456
GTS/ESH, 2012 WL 5438945 (N.D.N.Y. Nov. 7, 2012) (collecting
cases).

means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Id. at *6. As noted above, Dr. Toor opined that Plaintiff had "moderate to marked" limitations in standing and walking "a long time," "moderate" limitations in bending and lifting, and needed to "avoid exertion." T. 477 (emphases supplied). A brief review of the applicable regulations and SSR makes it obvious that, to the contrary, Dr. Toor's opinion facially incompatible with light work. The ALJ's conclusion otherwise is based on a misreading of the record and the law.

If the ALJ had actually given Dr. Toor's opinion, as written, "great weight", the only possible exertional category consistent with Dr. Toor's limitations would be, at most, a range of sedentary work. However, the Commissioner failed to offer and the ALJ did not cite any medical opinion to controvert the substance of Dr. Toor's opinion. "In the absence of a medical opinion to support the ALJ's finding as to [Plaintiff]'s ability to perform [light] work, it is well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion. . . . [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he [or she] is not free to set his own expertise against that of a physician who

[submitted an opinion to or] testified before him [or her].'" Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (quoting McBrayer v. Secretary of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983) (internal quotation marks and citations omitted); citing Filocomo v. Chater, 944 F. Supp. 165, 170 (E.D.N.Y. 1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings.")). Based on the Medical Vocational Grids, due to Plaintiff's age, education, and the lack of transferable skills from her prior work, she would be disabled if she can only perform sedentary work. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.12 (claimant is advanced age; high school graduate or more-does not provide for direct entry into skilled work; previous work is unskilled or claimant has no transferable skills; a finding of "disabled" is directed).

Turning next to Dr. Lin's opinion regarding the limiting effects of Plaintiff's mental impairments, the ALJ gave "great weight" to Dr. Lin's opinion "insofar as the claimant has no more than mild limitations." T. 42.
The ALJ noted that "less weight" was given to Dr. Lin's opinion that Plaintiff was "moderately" limited in dealing with stress because it "seems to understate [Plaintiff's] functional capacity and is out of proportion to the mental status examination findings." T. 42. The Second Circuit has held that it is error for an ALJ to reject a medical opinion "solely on the basis that the

opinions allegedly conflicted with the physicians' own clinical findings." Balsamo, 142 F.3d at 80. However, the ALJ committed this precise error in evaluating Dr. Lin's opinion.

Finally, with regard to Ms. Louis's opinion, the ALJ credited it only "insofar as the claimant has no more than mild limitations." T. 42. However, the ALJ ignored, without explanation, Ms. Louis's statement that Plaintiff would have "moderate" limitations in understanding, remembering, carrying out, and making judgments on complex work. It is well-settled that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996); see also Balsamo v. Chater, 142 F.3d at 80-81. It was not enough for the ALJ to simply imply that moderate limitations in dealing with complex tasks were unsupported by the balance of the record without explaining how. See Velez v. Berryhill, No. 17-CV-06551 (BCM), 2018 WL 4609110, at *10 (S.D.N.Y. Sept. 25, 2018)("Although the ALJ's intention is not entirely clear, the Court presumes that the phrase 'but not a marked degree of limitation' means that the ALJ rejected the portions of Dr. Haberman's opinion that found plaintiff had marked limitations with regard to his ability to maintain attention and concentration, work in coordination with/or in proximity with others, accept

instructions and respond appropriately to criticism, get along with co-workers or peers, and travel to unfamiliar places or use public transportation. As so construed, the ALJ's language describes what the ALJ did, but does not explain *why* he did it.") (emphasis supplied). The Court thus is unable to discern the rationale for the ALJ's determination as to the weight given to Ms. Louis's opinion, thereby frustrating its ability to conduct a meaningful review.

Importantly, the balance of the record supports Dr. Lin and Ms. Louis's opinions. Before proceeding any further, the Court finds that—although Plaintiff does not raise this argument—the ALJ erred at step two by not deeming Plaintiff's depression and anxiety to be severe impairments. The only reasonable conclusion from the record is that Plaintiff's depression and anxiety were severe impairments because, contrary to the ALJ's finding, they do "cause more than a minimal limitation in [her] ability to perform basic mental work activities," T. 37. The ALJ consistently downplayed the severity of Plaintiff's depression and anxiety, noting that she had undergone counseling for depression and cocaine dependence had not needed "significant treatment." T. 37. This again is a gross mischaracterization of the record. Plaintiff was treated on a bi-weekly or monthly basis for her depression and anxiety throughout 2016 and into 2017. T. 639-799. She received medication management or therapy on 24 occasions from January 2016, to April

2017; this course of treatment cannot be characterized as insignificant either in terms of its duration or its extent. Moreover, her therapists routinely identified abnormal examination findings, including over-productive speech patterns, anxious and depressed mood, tangential thought process, thought content remarkable for preoccupations, overvalued ideas, and helplessness, mild confusion, only fair insight and judgment, thought associations remarkable for thought blocking, perseveration, thought content remarkable for preoccupation, rumination, and somaticization, and inability to "stay on topic." T. 671, 680, 685, 689, 695, 709, 717, 726. The ALJ provided no explanation why such objective findings would be inconsistent with at least moderate limitations in dealing with stress and performing complex work.

The ALJ's step two error was not rendered harmless by virtue of the fact that she proceeded with the sequential evaluation because she did not properly evaluate the work-related limitations caused by Plaintiff's mental impairments and how the manifestations of Plaintiff's physical impairments were confounded by her anxiety and depression. The ALJ ignored that Plaintiff's treatment providers identified an interplay between her anxiety and cardiac issues. For instance, Plaintiff's initial chest pain, which lead to her diagnosis of diastolic dysfunction, was precipitated by an argument with her son. T. 326. Her symptoms began as she went for a walk to "relieve stress." Id. Plaintiff reported that her chest

pain and palpitations coincided with feeling stressed. T. 401, 414, 866, 935. Dr. Akbar Ahmed, who treated her cardiac issues, believed that some of her symptoms could stem from her "underlying anxiety." T. 935. Dr. Faisal Shamsie thought that some of her cardiac symptoms could by psychosomatic. T. 873. These opinions from treating sources further bolsters the psychiatric opinions that Plaintiff is at least moderately in dealing appropriately with stress. Indeed, they suggest that Plaintiff's limitations in coping with stress not only impact her mental health but her physical health, further undermining the ALJ's RFC finding of light work.

The ALJ's decision to reject Dr. Lin's opinion that Plaintiff had moderate limitations in dealing with stress and Ms. Louis's moderate limitations in complex work were not only unsupported by substantial evidence in the record, they infected the ALJ's step four finding. The ALJ found that Plaintiff could perform one job in the national economy, namely, her past relevant work as a volunteer coordinator. T. 43. However, this job was characterized was "highly skilled" with a specific vocational preparation ("SVP") of seven. T. 43. The Commissioner has recognized that "[i]n the world of work, losses of intellectual and emotional capacities are generally more serious when the job is complex." SSR 85-15, 1985 WL 56857, at *5 (S.S.A. Jan. 1, 1985). SSR 85-15 emphasizes the importance of considering the effects of mental impairments on a claimant's ability to cope with  stress necessarily encountered in every

workplace. See id. at *6 ("The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. . . . Thus, the mentally impaired may have difficulty meeting the requirements of even so-called 'low-stress' jobs.").

It bears noting Plaintiff specifically testified that her previous job was highly stress. The stress she experienced at work was why she believed she could no longer perform her job. T. 104. The VE also testified that if a hypothetical individual were limited to low stress jobs, she would be unable to perform the job of a coordinator.

Thus, if the ALJ had properly credited either of these opinions on Plaintiff's mental impairments, the ALJ would have concluded Plaintiff was unable to perform her past relevant work. If Plaintiff were unable to perform her past relevant work, based on the ALJ's RFC as it stands, the Medical Vocational Grids would have directed a finding of disability as of Plaintiff's fifty-fifth birthday. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.06 (claimant is of advanced age; high school graduate or more—does not

provide for direct entry into skilled work; skilled or semi-skilled past work not transferable; a finding of "disabled" is directed).

## II. The ALJ Erred in her Step Four Finding that Plaintiff Performed the Past Work of a "Coordinator"

Plaintiff contends that the ALJ erred in her step four finding that Plaintiff performed the past work of a "coordinator." Plaintiff argues that the ALJ's finding was improper because the Dictionary of Occupational Titles ("DOT") "definition of a 'coordinator' as found by the ALJ bears little to no resemblance to the job Plaintiff performed at Community Place of Greater Rochester. Therefore, the ALJ's Step Four denial is unsupported by substantial evidence, warranting remand." Plaintiff also contends that the job of a "coordinator," as defined by the DOT and found by the ALJ, does not match the job testified to by the VE. Plaintiff states that "coordinator" is defined as follows in the DOT:

> Coordinates student and community volunteer services program in organizations engaged in public, social, and welfare activities: Consults administrators and staff to determine organization needs for various volunteer services and plans for volunteer recruitment. Interviews, screens, and refers applicants to appropriate units. Orients and trains volunteers prior to assignment in specific units. Arranges for on-the-job and other required training and supervision and evaluation of volunteers. Resolves personnel problems. Serves as liaison between administration, staff, and volunteers. Prepares and maintains procedural and training manuals. Speaks to community groups, explaining organization activities and role of volunteer program. Publishes agency newsletter, and prepares news items for other news media. Maintains personnel records. Prepares statistical reports on extent, nature, and value of volunteer service.

19

U.S. Dep't of Labor, Employment & Training Admin., Dictionary of Occupational Titles, Vol. II (4th ed. 1991).

In response, the Commissioner argues that "Plaintiff bears the burden at step four to prove that she cannot perform her past kind of work either as it was actually performed, or as it is generally performed in the national economy." The Commissioner contends that Plaintiff testified at the hearing that her past job was as a "coordinator." The Commissioner also argues that at the hearing the VE was able to testify to a definition of Plaintiff's past work and that the VE's definition corresponded to that of a coordinator under DOT #187.167-022.

**A.    The VE's Hearing Testimony**

At the hearing, the VE testified that Plaintiff's past coordinator job was performed "at the sedentary level of physical demand, skilled work activity, SVP of 7," and had the DOT number of 187.167-022. T. 102. The VE then testified that a hypothetical individual with a "sedentary range of exertion with lifting occasionally ten and frequently less than ten, lifting and carrying, standing or walking two hours in an eight-hour workday, sitting six hours of an eight-hour workday and then in addition of the occasional postural activities and avoid concentrated exposure to hazards, fumes, odors, chemical irritants, and poor ventilation" would be capable of performing the past work of Plaintiff as a coordinator. T. 104-05.

The ALJ then added the following additional limitations to the hypothetical individual: "limited to low-stress jobs defined as only occasional decision-making and no production . . . no fast paced or high production goal work." T. 105. The VE testified that these further limitations "would preclude the past relevant work activity" and that past work would not impart transferrable skills to that range of exertion. T. 105.

### B. Plaintiff's Hearing Testimony of Past Work as "Coordinator"

At the hearing, Plaintiff testified her past "coordinator" job was created for her through a block grant program at a non-profit organization. T. 103. Further, she stated her job "only lasted enough time for [the organization] to duplicate [the job] and give it to other people." T. 103-04. Therefore, she testified, that job is not around anywhere in the City of Rochester. T. 103-04.

Plaintiff further testified that she could not perform her prior work as a "coordinator" now because it was too stressful. T. 104. Plaintiff described her position as an "advocate" because she had "to deal with parents [and] problems." T. 104. She also testified she would have to deal with parent safety and gave the example of having to deal with encountering a fight somewhere while with the parents. T. 104. Finally, Plaintiff testified her prior work as a "coordinator" required walking the neighborhood with the parents as their children went to and from school to keep them safe. T. 83.

### C. The ALJ Mischaracterized the VE's and Plaintiff's Testimony

The ALJ failed to properly analyze the VE's and Plaintiff's hearing testimony when making her Step Four evaluation. The Commissioner argues that the ALJ's finding at Step Four should be affirmed because Plaintiff is not disabled and can perform her past relevant work as a "coordinator" as that job is generally performed. This argument is flawed because "the Step Four inquiry requires 'separate evaluations of the previous specific job and the job as it is generally performed.'" Glessing v. Comm'r of Soc. Sec. Admin., 725 F. App'x 48, 50 (2d Cir. 2018), as amended (Feb. 27, 2018) (summary order) (quoting Jasinski v. Barnhart, 341 F.3d 182, 183 (2d Cir. 2003)). Here, the ALJ only analyzed Plaintiff's ability to perform her past work as a "coordinator" as it is generally performed, not as how she performed it from 2005-2007. T. 43, 83. Therefore, the ALJ failed to correctly follow the law in making her decision at Step Four.

Furthermore, the ALJ failed to consider the amount of stress Plaintiff testified was part of her past relevant work as a "coordinator" and the VE's testimony that plaintiff would be unable to perform her past relevant work even if it were low-stress with only occasional decision-making and no production. Therefore, the ALJ's Step Four decision is inconsistent with the testimonies of both Plaintiff and the VE and unsupported by substantial evidence.

**III  Remedy**

"Sentence four of Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405(g)).  The standard for directing a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability, Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980), and where there is no reason to conclude that the additional evidence might support the Commissioner's claim that the claimant is not disabled, Butts, 388 F.3d at 385–86.

After reviewing the entire record, the Court finds that it already has been developed fully for the relevant period. Furthermore, the Court finds that the record contains persuasive proof of Plaintiff's disability. The sole, uncontroverted medical opinion in the record, from an acceptable medical source who examined Plaintiff, does not support the ALJ's RFC finding of light work; rather, it at most suggests Plaintiff is capable of sedentary work. In such case, the Medical Vocational Guidelines direct a finding of disability, given Plaintiff's age, education, and work experience. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.12 (claimant is advanced age; high school graduate or more–does not provide for direct entry into skilled work; previous work is

unskilled or claimant has no transferable skills; a finding of "disabled" is directed).

Assuming _arguendo_ that the ALJ's RFC finding is legally correct and supported by substantial evidence, which it is not, Plaintiff still must be found disabled because she is unable to perform her past relevant work. In such case, based on the ALJ's RFC as it stands, the Medical Vocational Grids direct a finding of disability as of Plaintiff's fifty-fifth birthday. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.06 (claimant is of advanced age; high school graduate or more—does not provide for direct entry into skilled work; skilled or semi-skilled past work not transferable; a finding of "disabled" is directed). Accordingly, remanding for the ALJ to correct the step four error would serve no purpose.

## CONCLUSION

For the foregoing reasons, I find that the ALJ's decision is not supported by substantial evidence and, therefore, Plaintiff's motion for judgment on the pleadings (Docket No. 13-1) is granted and the matter is remanded solely for the calculation and payment of benefits. The Commissioner's motion for judgment on the pleadings (Docket No. 19-1) is denied. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:     July 19, 2019
           Rochester, New York.